UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHAWN KEVIN FROST,<br><br>Plaintiff,<br><br>v.<br><br>J. HALLOCK, et al.,<br><br>Defendants. | Case No. 17-CV-07229-LHK   (PR)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS FOR SUMMARY<br>JUDGMENT ON THE FOURTEENTH<br>AMENDMENT CLAIM; GRANTING IN<br>PART AND DENYING IN PART<br>DEFENDANTS' MOTIONS TO STRIKE**<br><br>Re: Dkt. Nos. 35, 49, 57 |

Plaintiff Shawn Frost ("plaintiff") is a California prisoner housed at Pelican Bay State Prison ("PBSP"). Plaintiff filed a *pro se* civil rights complaint, pursuant to 42 U.S.C. § 1983. He sued J. Hallock, a sergeant at PBSP ("Sergeant Hallock"); J. Hunt, correctional lieutenant at PBSP ("Lieutenant Hunt"); T.A. Wood, captain at PBSP ("Captain Wood"); A. Bond, then appeals coordinator and now correctional counselor at PBSP ("Appeals Coordinator Bond")[1]; defendant D. Melton, correctional counselor at PBSP ("Counselor Melton"); defendant D. Barneburg, then correctional lieutenant and now associate warden at PBSP ("Associate Warden Barneburg"); C.

---

[1] Although Bond is now a correctional counselor, during the relevant events he was an appeals coordinator. To avoid confusion, the Court refers to him as Appeals Coordinator Bond.

Ducart, chief deputy warden at PBSP ("Chief Deputy Warden Ducart"); and D.W. Bradbury, correctional administrator and chief disciplinary officer ("CDO") at PBSP ("CDO Bradbury") (collectively, "defendants"). Plaintiff alleged defendants violated plaintiff's constitutional rights during prison disciplinary and grievance proceedings. Plaintiff cited the First, Fifth, Eighth, and Fourteenth Amendments, but did not state which actions by which defendants violated which rights. *See* Compl. at 3. A Magistrate Judge screened the Complaint and concluded that plaintiff stated a cognizable claim for violation of the Due Process Clause of the Fourteenth Amendment.

Seven defendants were promptly served: Sergeant Hallock, Captain Wood, Appeals Coordinator Bond, Counselor Melton, Associate Warden Barneburg, Chief Deputy Warden Ducart, and CDO Bradbury. These seven defendants filed a motion for summary judgment on plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment ("Hallock MSJ"). *See* Dkt. No. 35. Plaintiff filed an opposition ("Hallock Opposition"), *see* Dkt. No. 40, and filed a supporting declaration ("Plaintiff's Declaration"), *see* Dkt. No. 41. Defendants filed a reply ("Hallock Reply") that also objected to four paragraphs of Plaintiff's Declaration. *See* Dkt. No. 46. Plaintiff responded by filing a document entitled "objections," *see* Dkt. No. 47. Defendants moved to strike plaintiff's "objections" as an improper sur-reply. *See* Dkt. No. 49 ("Motion to Strike").

The eighth defendant, Lieutenant Hunt, was served in November 2018. *See* Dkt. No. 55. Lieutenant Hunt filed a motion for summary judgment on plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment ("Hunt MSJ"). *See* Dkt. No. 57. The Court will refer to the Hallock MSJ and the Hunt MSJ collectively as "Summary Judgment Motions." Plaintiff opposed the Hunt MSJ ("Hunt Opposition"). *See* Dkt. Nos. 58. The Court will refer to the Hallock Opposition and the Hunt Opposition collectively as "Oppositions." Defendants filed a reply ("Hunt Reply"). *See* Dkt. No. 59.

Defendants' Summary Judgment Motions argued plaintiff has failed to state a claim for violation of the Due Process Clause of the Fourteenth Amendment. For the reasons stated below, defendants' Summary Judgment Motions on plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment are **GRANTED**. Defendants' motion to strike is **GRANTED** in part and **DENIED** in part. The Court will address in a separate order plaintiff's claims for violations of the First, Fifth, and Eighth Amendments.

## I. BACKGROUND

The following facts, given in chronological order, are viewed in the light most favorable to plaintiff. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (stating that, at summary judgment, courts must view the evidence in the light most favorable to the nonmoving party). Unless otherwise indicated, the facts are undisputed.

### A. Hunger Strike, Subsequent Disciplinary Proceedings

In June 2013, PBSP adopted Operational Procedure 228 ("OP 228"), that "delineates the roles and responsibilities of custody staff during an . . . inmate hunger strike." Dkt. No. 35-05 ("Hallock Decl.") ¶ 4; Hallock Decl., Ex. A ("OP 228") at 1. OP 228 instructed officers to "[e]nsure disciplinary action is taken against participating inmates . . . in accordance with the CCR, Title 15, Section 3315 . . . ." OP 228 at 1.

In July 2013, plaintiff participated in a hunger strike protesting prison conditions.[2] *See* Dkt. No. 1 ("Complaint") at 3. On July 15, 2013, Sergeant Hallock authored a Rules Violation Report ("RVR") alleging that plaintiff was engaged in a hunger strike. *See id*.; *see also* Hallock Decl., Ex. B ("RVR"). The RVR stated that because of the hunger strike, "Peace Officers and medical personnel in every facility at [PBSP] were delayed in and [/] or obstructed from completing normal duties due to being required to respond to the demands of the mass disturbance." *Id*. Sergeant Hallock alleged plaintiff had violated the rules by "willfully delaying a

---

[2] The prison conditions under protest were not discussed in the record.

3

peace officer" through plaintiff's "participation in [a] mass hunger strike." *Id*. The RVR was referred to Counselor Melton. Compl. at 3. Counselor Melton reviewed and classified the RVR as "serious" and referred it to a senior hearing officer. *See* Dkt. No. 35-07 ("Melton Decl.") ¶ 7.

Lieutenant Hunt acted as the senior hearing officer and conducted a disciplinary hearing. *See* Dkt. No. 57-01 ("Hunt Decl.") ¶¶ 1-2, 5-7. In the Oppositions, plaintiff explained that he wished to call Sergeant Hallock and Associate Warden Barneburg as witnesses at plaintiff's disciplinary hearing. *See* Hallock Opp. at 6, 13. Lieutenant Hunt did not permit plaintiff to call witnesses. *See* Hunt Opp. at 2, 4, 5, 8, 14. In the Oppositions, Plaintiff contended that Lieutenant Hunt also denied plaintiff an unbiased hearing; would not allow plaintiff to present evidence; and would not allow plaintiff to be heard. *Id*. at 4.

Lieutenant Hunt found plaintiff guilty of "willfully delaying a peace officer." Hunt Decl. ¶ 7 (citing Cal. Code Regs. tit. 15 § 3005(a)). Lieutenant Hunt assessed plaintiff a forfeiture of 90 days' good-time credit and placed plaintiff into a restricted-privileges group for a total of 30 days. *See* Hunt Decl., Ex. A at 5 ("Disciplinary Decision"). As part of the restrictive-privileges group, plaintiff was allowed "no family visits, no telephone calls, limited (concrete) yard access, no access to any other recreational or entertainment activities, no accrual of excused time off, no special packages, no special canteen purchases and one-fourth the maximum monthly canteen draw." *Id*. In the Hallock Opposition, Plaintiff stated his personal appliances also were confiscated. Hallock Opp. at 3. Both the privileges restriction and the property confiscation appear to have been for a total of 30 days. *See* Disciplinary Decision at 5 ("[T]hese restrictions will remain in place for FROST for a total of 30 days.").

Plaintiff sought review of Lieutenant Hunt's decision from Captain Wood. *See* Compl. at 3; *see also* Hallock Opp. at Ex. C (requesting review by Captain Wood). Captain Wood reviewed and approved Lieutenant Hunt's decision and referred the matter to the chief disciplinary officer. *See* Dkt. No. 35-09 ("Wood Decl."). Plaintiff alleged Chief Disciplinary Officer ("CDO") Bradbury "signed off" on the findings. Compl. at 3; *see also* Dkt. No. 35-03 ("Bradbury Decl.")

4

¶¶ 1-2 (explaining CDO Bradbury's role at PBSP).  CDO Bradbury responded that he "was not the Chief Disciplinary Officer for this report and the document does not bear [his] signature."  Bradbury Decl. ¶ 6.  CDO Bradbury stated he cannot read the signature of whomever signed off on the findings.  *Id.*  The Court's review of the findings reveals that a typeface name below the signature reads "D.W. Bradbury," but the signature itself is illegible.  *See* Hunt Decl., Ex. A at 2.  Because defendants are entitled to summary judgment for the reasons discussed below, the Court will not delve further into the signatory's identity.

Plaintiff contended that through the above actions, defendants Sergeant Hallock, Counselor Melton, Associate Warden Barneburg, Lieutenant Hunt, Captain Wood, and CDO Bradbury (collectively, "Disciplinary Defendants") violated plaintiff's constitutional rights.  Compl. at 3. The Complaint cited the First, Fifth, Eighth, and Fourteenth Amendments, but did not state which actions by which Disciplinary Defendant violated which rights.  *See* Compl. at 3.

**B.      California's Framework for Administrative Appeals**

The California Department of Corrections and Rehabilitation ("CDCR") allows inmates and parolees to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Inmates may also file administrative appeals alleging misconduct by correctional officers.  *See id.*  Under the regulations, as amended effective January 28, 2011, there are three levels: first level appeal, second level appeal, and third level appeal.  Cal. Code Regs. tit. 15, § 3084.7.

"Administrative exhaustion within California requires the completion of the third level of administrative review."  *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).  Inmates must name any "issue, information, or person . . . in the originally submitted CDCR Form 602."  Cal. Code Regs. tit. 15, § 3084.1.  California regulations also require the appeal to name "all staff member(s) involved" and "describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).

### C.     Plaintiff's Grievance, Administrative Appeal

The same day a CDO signed off on the disciplinary proceedings, plaintiff filed an administrative appeal. Compl. at 4. Plaintiff contended he suffered "numerous due process [and] equal protection violations." *See* Hallock Opp., Ex. A at 3 ("Grievance"). Plaintiff summarized the disciplinary proceedings, argued hunger strikes are not forbidden by the California Code of Regulations or the Department Operations Manual, and argued plaintiff did not "caus[e] any delay, disturbance, or obstruction to anyone." *Id*. at 5. Plaintiff requested that the RVR be expunged from his record and full privileges be restored. *Id*. at 3 (citing the First Amendment).

The Grievance bypassed first level review. *Id*. at 3, 4, 6 (stamped "bypass"). At second level review, Appeals Coordinator Bond interviewed plaintiff regarding the Grievance, and submitted proposed findings and recommendations. *See* Dkt. No. 35-04 ("Ducart Decl."), ¶ 6. Appeals Coordinator Bond's findings and recommendations were not included in the record. Instead, a form entitled "Appeals Effective Communication Confirmation" was signed by Appeals Coordinator Bond and submitted along with Chief Deputy Warden Ducart's Second Level Review decision. *See* Ducart Decl., Ex. A at 4

Appeals Coordinator Bond's findings and recommendations were reviewed by Chief Deputy Warden Ducart, apparently on behalf of non-defendant R.E. Barnes, the warden of PBSP ("Warden Barnes"). *See* Ducart Decl. ¶¶ 1, 6 (explaining Ducart reviewed on behalf of Warden Barnes); *see also* Ducart. Decl., Ex. A at 3 ("Grievance 2d Level Decision") (showing Chief Deputy Warden Ducart's signature above Warden Barnes's typeface name). Warden Barnes was initially named as a defendant in this action. Compl. at 1, 3. However, plaintiff voluntarily dismissed Warden Barnes in August 2018. *See* Dkt. No. 38.

Chief Deputy Warden Ducart concluded that Lieutenant Hunt's "finding was reasonable and [plaintiff] has failed to present sufficient evidence to warrant a dismissal . . . nor has [plaintiff] provided any evidence his due process was violated." Grievance 2d Level Decision at 3. Chief Deputy Warden Ducart denied plaintiff's Grievance at the second level of review. *Id*.

Plaintiff appealed the Grievance to the third level of review. Plaintiff argued Appeals Coordinator Bond and Warden Barnes had failed to address plaintiff's First Amendment and due process claims. Grievance at 4. Plaintiff also argued Appeals Coordinator Bond and Warden Barnes ignored proper protocol in taking and evaluating plaintiff's Grievance, in light of plaintiff's participation in the Mental Health Delivery System. *Id.* at 6. As noted, Chief Deputy Warden Ducart, on behalf of Warden Barnes, reviewed plaintiff's Grievance at the third level. *See* Ducart Decl. ¶¶ 1, 6. Plaintiff appears to allege that Chief Deputy Warden Ducart failed to address plaintiff's claims and failed to follow protocol in taking and evaluating plaintiff's Grievance. Plaintiff reiterated he had not interfered with or obstructed any staff. *Id.*

At the third level of review, non-defendant appeals examiner Davis ("Appeals Examiner Davis") summarized plaintiff's arguments and the Grievance 2d Level Decision. *See* Hallock Opp., Ex. A at 1 ("Grievance 3d Level Decision"). Appeals Examiner Davis concluded that plaintiff had been "afforded due process," and that "[s]ufficient evidence exists to support the finding of [plaintiff's] guilt." *Id.* Appeals Examiner Davis noted that plaintiff had added new issues to the Grievance on appeal but declined to address them because "it is not appropriate to expand the appeal beyond the initial problem and the initially requested action." *Id.* at 2. Appeals Examiner Davis concluded that the Grievance 3d Level Decision exhausted plaintiff's administrative remedies. *Id.* In the Complaint, plaintiff agreed that the "final level of review" of his administrative appeal "was completed on" December 4, 2013. Compl. at 4.

Plaintiff contended that through these actions, defendants Appeals Coordinator Bond and Chief Deputy Warden Ducart (collectively, "Grievance Defendants") violated plaintiff's constitutional rights. Compl. at 3. In the Complaint, plaintiff cited the First, Fifth, Eighth, and Fourteenth Amendments, but did not state which actions violated which rights. *See* Compl. at 3.

### D.     Plaintiff's Habeas Petition, Recovery of Good-time Credits

After administrative remedies were exhausted, plaintiff filed a petition for habeas relief from the California state courts and requested that the disciplinary conviction be expunged from

7

plaintiff's prison record. *See* Compl. at 4 (stating plaintiff filed a habeas petition May 5, 2014); *see also* Dkt. No. 42 (documents from petitioner's habeas proceedings). Plaintiff pursued his habeas petition to the California Supreme Court, which ordered CDCR to show cause why plaintiff was not entitled to relief under California case law. Compl. at 4 (quoting the California Supreme Court's order and citation to *In re Gomez* (2016) 246 Cal. App. 4th 1082). The appeal was remanded to the California First Appellate Division, which appointed counsel.

Approximately two months later, Associate Warden Barneburg modified and dismissed the Disciplinary Decision. *Id.*; *see also* Dkt. No. 35-1 ("Barneburg Decl.") ¶ 1, 3. Associate Warden Barneburg checked a box stating the Disciplinary Decision's "finding is not supported by the evidence and it is not reasonable to believe that a new hearing would discover new evidence supporting the finding." Barneburg Decl., Ex. A ("Modification Order") at 1. The Modification Order stated the "Chief Disciplinary Officer [had] recently reviewed" plaintiff's Disciplinary Decision, and "[b]ased on that review" the Disciplinary Decision was "modif[ied], reverse[d], and dismiss[ed]" and plaintiff's good-time credits were restored. *Id.*

Plaintiff alleged Associate Warden Barneburg violated plaintiff's constitutional rights. Compl. at 3. The Complaint did not state which actions by Associate Warden Barneburg violated which of plaintiff's rights. *See* Compl. at 3.

**E.    Proceedings in This Court**

Plaintiff filed the instant suit on December 14, 2017. *See* Compl. at 4 (stating the Complaint was mailed December 14, 2017; *see also Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying the mailbox rule to prisoner's § 1983 complaint) (relying on *Houston v. Lack*, 487 U.S. 266 (1988)). The Complaint detailed the events described above and alleged that "the defendants' actions complained of . . . violated plaintiff's rights under the United States Constitution Amendments First, Fifth, Eighth, and Fourteenth." Compl. at 3. As relief, plaintiff sought a declaratory judgment that defendants' actions violated plaintiff's rights, damages of $25,000 from each defendant, attorneys' fees, and costs. *Id.* at 3-4.

Case No. 17-CV-07229-LHK  (PR)
ORDER GRANTING DEFS.' MOTS. FOR SUMM. JUDGMENT ON DUE PROCESS CLAIM; GRANTING IN PART AND DENYING IN PART DEFS.' MOTS. TO STRIKE

United States District Court
Northern District of California

United States Magistrate Judge Corley screened the Complaint.  *See* Dkt. No. 5 ("Screening Order"); *see also* 28 U.S.C. § 1915A(a) (requiring federal courts to engage in a preliminary screening of prisoners' complaints).  Magistrate Judge Corley concluded plaintiff had "state[d] a cognizable claim for relief against Defendants for violating his right to due process." Screening Order at 2-3.  Magistrate Judge Corley ordered the United States Marshal to serve defendants and set a deadline for dispositive motions.  *Id.*

In April 2018, the United States Marshal served Sergeant Hallock, Captain Wood, Appeals Coordinator Bond, Counselor Melton, Associate Warden Barneburg, Chief Deputy Warden Ducart, and CDO Bradbury.  *See* Dkt. No. 9.  These seven defendants filed a motion for summary judgment on plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment ("Hallock MSJ").  *See* Dkt. No. 35.  Plaintiff filed an opposition ("Hallock Opposition"), *see* Dkt. No. 40, and filed a supporting declaration ("Plaintiff's Declaration"), *see* Dkt. No. 41.  Defendants filed a reply ("Hallock Reply") that also objected to four paragraphs of Plaintiff's Declaration.  *See* Dkt. No. 46.  Plaintiff responded by filing a document entitled "objections," *see* Dkt. No. 47.  Defendants moved to strike plaintiff's "objections" as an improper sur-reply.  *See* Dkt. No. 49 ("Motion to Strike").

The eighth defendant, Lieutenant Hunt, was served in November 2018.  *See* Dkt. No. 55. Lieutenant Hunt filed a motion for summary judgment on plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment ("Hunt MSJ").  *See* Dkt. No. 57.  The Court will refer to the Hallock MSJ and the Hunt MSJ collectively as "Summary Judgment Motions." Plaintiff opposed the Hunt MSJ ("Hunt Opposition").  *See* Dkt. Nos. 58.  The Court will refer to the Hallock Opposition and the Hunt Opposition collectively as "Oppositions."  Defendants filed a reply ("Hunt Reply").  *See* Dkt. No. 59.

## II.    LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as

United States District Court
Northern District of California

a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating summary judgment standard). A dispute is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (clarifying summary judgment standard). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See id.* at 324.

At summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with the nonmoving party's evidence, the court must assume the truth of the nonmoving party's evidence. *See Leslie*, 198 F.3d at 1158. The court's function on a summary judgment motion is not to "make credibility determinations" or "weigh conflicting evidence with respect to a disputed material fact." *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

Plaintiff asserted a claim for violation of the Due Process Clause of the Fourteenth Amendment against defendants J. Hallock, a sergeant at PBSP ("Sergeant Hallock"); J. Hunt, a correctional lieutenant at PBSP ("Lieutenant Hunt"); T.A. Wood, a captain at PBSP ("Captain Wood"); A. Bond, then an appeals coordinator and now a correctional counselor at PBSP ("Appeals Coordinator Bond"); defendant D. Melton, a correctional counselor at PBSP

("Counselor Melton"); defendant D. Barneburg, then a correctional lieutenant and now an associate warden at PBSP ("Associate Warden Barneburg"); C. Ducart, a chief deputy warden at PBSP ("Chief Deputy Warden Ducart"); and D.W. Bradbury, a correctional administrator and chief disciplinary officer ("CDO") at PBSP ("CDO Bradbury") (collectively, "defendants").

Plaintiff alleged that defendants, during prison disciplinary and grievance proceedings, violated plaintiff's right to due process. Specifically, plaintiff alleged that Sergeant Hallock, Counselor Melton, Associate Warden Barneburg, Lieutenant Hunt, Captain Wood, and CDO Bradbury (collectively, "Disciplinary Defendants") violated plaintiff's right to due process while conducting disciplinary proceedings. Plaintiff did not state which actions by which Disciplinary Defendant violated plaintiff's right to due process. *See* Compl. at 3.

Plaintiff alleged that defendants Appeals Coordinator Bond and Chief Deputy Warden Ducart (collectively, "Grievance Defendants") violated plaintiff's right to due process while conducting grievance proceedings. *See id*. Plaintiff did not state which actions by which Grievance Defendant violated plaintiff's right to due process. *See id*.

In the Summary Judgment Motions, defendants argued that they are entitled to summary judgment because plaintiff did not exhaust his due process claim against all defendants; plaintiff's claim fails on the merits; and defendants are entitled to qualified immunity. Specifically, defendants argued plaintiff failed to exhaust his due process claim as to Appeals Coordinator Bond and Chief Deputy Warden Ducart, the Grievance Defendants.

In addition, defendants argued that plaintiff's claim fails as to defendants Sergeant Hallock, Counselor Melton, Appeals Coordinator Bond, Chief Deputy Warden Ducart, CDO Bradbury, and Associate Warden Barneburg because none of these defendants participated in the grievance hearing where plaintiff alleges he was denied due process.

Defendants also argued that plaintiff's claim against the Disciplinary Defendants fails on the merits because plaintiff cannot recover for the loss of his later-returned good-time credits, and the temporary loss of privileges was not serious enough to "trigger" the Due Process Clause. Even

11

if plaintiff could "trigger" the Due Process Clause, defendants argued that plaintiff's claim fails on the merits because plaintiff received due process before his good-time credits and privileges were suspended. And finally, defendants argued that even if the Due Process Clause was triggered, and even if plaintiff was not given adequate process before his good-time credits and privileges were taken away, defendants are entitled to qualified immunity. *See generally*, Hallock MSJ.

The Court will address the exhaustion argument first, because "the exhaustion question in PLRA cases . . . should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). As detailed below, the Court concludes that plaintiff failed to exhaust his claim as to the Grievance Defendants. On that basis, the Court grants defendants' Summary Judgment Motions as to plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment against the Grievance Defendants.

The Court will then address the merits of plaintiff's due process claim against the Disciplinary Defendants. As detailed below, the Court finds that plaintiff has failed to identify a liberty or property interest sufficient to trigger the Due Process Clause. Because the Due Process Clause was not triggered, the requirements of due process did not apply to the disciplinary proceedings, and plaintiff's due process claim fails. On that basis, the Court grants defendants' Summary Judgment Motions as to the claim for violation of the Due Process Clause of the Fourteenth Amendment against the Disciplinary Defendants. Because the Court grants summary judgment as to all defendants, the Court need not address defendants' other arguments.

**A. The Claims and Arguments at Issue**

Before addressing the Summary Judgment Motions, the Court must clarify which claims and arguments it considers in this Order.

Plaintiff filed a *pro se* prisoner civil rights complaint. *See* Compl. at 4. The Complaint summarized disciplinary, grievance, and habeas proceedings plaintiff had undergone. *See generally*, *id.* Although the Complaint cited four constitutional amendments, it did not explain what each defendant had done that violated these amendments. *See generally*, *id.* In fact, aside

from stating Sergeant Hallock "fabricated" an RVR, and Counselor Melton "classified this bogus RVR," plaintiff did not state that any of the defendants' actions were wrong. *See generally*, *id*. Plaintiff asked the court to declare that "defendants' actions complained of herein violated plaintiff's rights under the United States Constitution Amendments First, Fifth, Eighth, and Fourteenth," and to award relief. *Id*. at 3. However, plaintiff did not tie any of the cited amendments to any specific defendant or action. *See generally*, *id*.

On February 9, 2018, Magistrate Judge Corley screened the Complaint. Magistrate Judge Corley concluded that plaintiff "seeks money damages for the punishment he received," and that when the Complaint is "liberally construed, Plaintiff states a cognizable claim for relief against Defendants for violating his right to due process." Screening Order at 2. By allowing plaintiff to proceed only on the claim for violation of the Due Process Clause of the Fourteenth Amendment, the Screening Order implicitly dismissed plaintiff's claims under the First, Fifth, and Eighth Amendments. *See id*. The Screening Order also ordered that the Complaint be served on defendants. *See id*. at 2-3.

As the Court will address in a separate order, the Ninth Circuit recently determined that all named parties, including unserved defendants, must consent before a magistrate judge has jurisdiction under 28 U.S.C. § 636(c)(1) to hear and decide a case. *See Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017) ("*Williams*"). Under *Williams*, magistrate judges cannot take dispositive action on a consent basis if they do not have the consent of unserved defendants. Magistrate judges can, however, submit proposed findings of fact and recommendations for the disposition of many pretrial matters. *See* 28 U.S.C. § 636(b)(1)(A), (B). Parties may file written objections to proposed findings and recommendations. *Id.* at § 636(b)(1); *see also* Fed. R. Civ. P. 72.

Here, Magistrate Judge Corley implicitly dismissed plaintiff's claims for violations of the First, Fifth, and Eighth Amendments. *See* Screening Order. The parties proceeded with the surviving claim, which alleged violation of the Due Process Clause of the Fourteenth Amendment. Defendants moved for summary judgment on this claim. *See* Hallock MSJ at 3 (identifying only

the due process claim as being at issue), Hunt MSJ at 2 (same); *see* Hallock Opp. at 7 (arguing about the due process claim), Hunt Opp. at 1 ("Defendants violated plaintiff's due process right, and plaintiff is entitled to sum[ary] j[udgment]").  Under the circumstances, the preferable approach is to treat Magistrate Judge Corley's ruling on the First, Fifth, and Eighth Amendment claims as proposed findings and recommendations and to give the parties an opportunity to file any objections they have to those findings and recommendations.  For the sake of clarity, the Court will issue a separate order giving the parties such an opportunity.  However, because the parties have fully briefed plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment, and that claim is ripe for review, the Court will proceed to summary judgment on that claim.

However, the Court will not consider the new claim plaintiff presented in his Oppositions to defendants' Summary Judgment Motions.  In June 2013, PBSP adopted an operational procedure, OP 228, that instructed officers to "[e]nsure disciplinary action is taken against participating inmates and those inmates identified as instrumental leaders in organizing, planning, and perpetuating a hunger strike, in accordance with the CCR, Title 15, Section 3315 . . . ."  Hallock Decl., Ex. A ("OP 228") at 4.  Plaintiff argued the method by which OP 228 was adopted violated the California Administrative Procedures Act and thus plaintiff's rights.  *See* Hallock Opp. at 8-9; Hunt Opp. at 15-16.  This claim was wholly absent from the Complaint, which referred only to the disciplinary, grievance, and habeas proceedings.  *See generally*, Compl.  Because plaintiff did not challenge OP 228's adoption in his Complaint, defendants did not receive "fair notice" that plaintiff intended to base a claim on these grounds.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (affirming summary judgment where the complaint did not give fair notice of the factual basis for a claim raised for first time in opposition to summary judgment); *Castillo v. Wells Fargo Bank, N.A.*, 554 F. App'x 646, 647 (9th Cir. 2014) (same, where plaintiff pled a retaliation claim but "failed to put [defendant] on notice of her retaliation claims arising from the denial of her transfer request").  Plaintiff also did not challenge

14

the adoption of OP 228 in his Grievance, so defendants cannot be said to have been put on notice during the administrative appeal. *See generally*, Grievance. Because defendants had no notice that plaintiff intended to challenge OP 228, the Court will not consider a new theory raised for the first time in opposition to a summary judgment motion. *See Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1126 n.8 (N.D. Cal. 2015) (rejecting a claim raised for the first time in opposition); *see also Saif'ullah v. Cruzen*, No. 15-CV-01739 LHK, 2017 WL 4865601, at *3 (N.D. Cal. Oct. 26, 2017) (same), *aff'd,* 735 F. App'x 415 (9th Cir. 2018); *Smith v. Cruzen*, No. 14-CV-04791 LHK, 2017 WL 4865565, at *3 (N.D. Cal. Oct. 26, 2017) (same), *aff'd,* 735 F. App'x 434 (9th Cir. 2018).

Furthermore, defendants objected to four paragraphs of Plaintiff's Declaration, filed with plaintiff's Hallock Opposition, because those paragraphs "offer legal conclusions that lack any foundational or evidentiary support." *See* Defs.' Objs. at 5 (challenging paragraphs 5-7 on page 2, and paragraphs 2-3 on page 3). The four paragraphs repeated arguments made in plaintiff's Oppositions. *See* Pl.'s Decl. at ¶¶ 5-6, 2-3. Accordingly, the Court strikes these paragraphs. *See Innovative Sports Mgmt., Inc. v. Robles*, No. 13-CV-00660-LHK, 2014 WL 129308, at *1 (N.D. Cal. Jan. 14, 2014) (striking "paragraphs [that] contain improper argument on the instant motion").

Finally, defendants moved to strike as an improper sur-reply the objections plaintiff filed to defendants' reply in support of the Hallock MSJ. *See* Mot. to Strike. The Court's review of the document plaintiff entitled "objections" reveals that the document, in fact, is a sur-reply. Plaintiff's "objections" did not object to defendants' evidence, but instead rebutted their arguments. *See generally*, Dkt. No. 47. Defendants correctly pointed out that plaintiff failed to seek approval before filing this sur-reply, as required by Civil Local Rule 7-3(d). However, defendants did not argue that they were prejudiced or that plaintiff was unfairly advantaged by this sur-reply. Because plaintiff is proceeding *pro se*, the Court *sua sponte* permits and considers the sur-reply.

15

### B.    Exhaustion of the Due Process Claim as to the Grievance Defendants

The Court addresses defendants' exhaustion arguments first because "the exhaustion question in PLRA cases . . . should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). The Court concludes that plaintiff failed to exhaust as to the Appeals Coordinator Bond and Chief Deputy Warden Ducart (the "Grievance Defendants") because plaintiff did not grieve any wrongs by the Grievance Defendants. Moreover, the Court concludes that plaintiff's failure to exhaust was not cured.

Plaintiff filed a Grievance complaining that he was disciplined after engaging in a hunger strike. Compl. at 4. Plaintiff contended that, in disciplinary proceedings, he suffered "numerous due process [and] equal protection violations." *See* Grievance at 3. Plaintiff stated Lieutenant Hunt had found plaintiff guilty of a rules violation. *See id.* at 3. Plaintiff argued the rules that govern inmates' behavior do not require inmates to accept or eat meals. *See id.* at 3, 5. Additionally, plaintiff argued he had not "willfully delayed a peace officer," as charged in the RVR, and "many due process violations occurred with this" rules violation. *Id.* at 5.

The Grievance bypassed first level review, *see id.* at 3, 4, 6, and Appeals Coordinator Bond and Chief Deputy Warden Ducart reviewed the Grievance at the second level, *see* Dkt. No. 35-04 ("Ducart Decl."), ¶ 6. At the second level, Appeals Coordinator Bond interviewed plaintiff and proposed findings which were then reviewed and approved by Chief Deputy Warden Ducart. *See id.* Chief Deputy Warden Ducart denied plaintiff's appeal to the second level and concluded that Lieutenant Hunt's findings were reasonable. *See* Grievance 2d Level Decision at 3.

Plaintiff appealed to the third level and added complaints against the Grievance Defendants to the Grievance. Grievance at 4. Specifically, plaintiff argued the Grievance Defendants had failed to address plaintiff's First Amendment and due process claim, and that they had ignored proper protocol in taking and evaluating plaintiff's Grievance, in light of plaintiff's status as a participant in the Mental Health Delivery System. *See id.* at 6. At the third level of review, Appeals Examiner Davis noted that plaintiff had added new issues to his Grievance on appeal but

16

declined to address them because "it is not appropriate to expand the appeal beyond the initial problem and the initially requested action." Grievance 3d Level Decision at 2.

In the Summary Judgment Motions defendants argued that plaintiff failed to exhaust his due process claim as to the Grievance Defendants. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Compliance with the exhaustion requirement is mandatory and is not left to the discretion of the district court. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.") The PLRA's exhaustion requirement cannot be satisfied by filing a "procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90-91 (footnote omitted). Here, plaintiff must follow the CDCR's grievance procedures. *See id.*

CDCR requires inmates to list the names of the alleged wrongdoers in administrative appeals. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3) ("The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue."). Inmates must also "describe the specific issue under appeal and the relief requested," *id*. at § 3084.2(a)(2), in the first level grievance, *see id*. at § 3084.1(b). In addition, a grievance must at minimum "'alert[] the prison to the nature of the wrong for which redress is sought'" and "put prison officials on notice of [the plaintiff's] complaint." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010).

Here, defendants argued plaintiff did not exhaust his due process claim as to the Grievance Defendants because plaintiff did not submit an administrative grievance complaining of wrongdoing by the Grievance Defendants. Hallock MSJ at 8. Defendants are correct. Plaintiff did not exhaust as to Appeals Coordinator Bond and Chief Deputy Warden Ducart because

17

plaintiff did not name them as wrongdoers until his appeal to the third level of review, and because their actions were not included in plaintiff's original Grievance.

Plaintiff responded that he "should not have to file a[n] additional administrative appeal pertaining to" Appeals Coordinator Bond and Chief Deputy Warden Ducart. Hallock Opp. at 11. First, this concedes that plaintiff did not include the Grievance Defendants in plaintiff's original Grievance, and thus that plaintiff did not exhaust. Second, filing an additional administrative appeal is precisely what plaintiff had to do to exhaust his claim as to Appeals Coordinator Bond and Chief Deputy Warden Ducart, and so defendants are correct that plaintiff has failed to exhaust.

The Ninth Circuit recently considered a case where a plaintiff challenged actions at the second level of appeal, where the plaintiff's grievance had been cancelled. *See Cortinas v. Portillo*, No. 15-17174, 2018 WL 5733048, at *1 (9th Cir. Oct. 31, 2018). The court held that "some remedy was available" to the plaintiff "because he could have appealed his improper cancellation." *Id*. at *1. Though the cancellation did not occur until the second level, this "did not excuse [the plaintiff's] obligation to exhaust available administrative remedies" challenging that cancellation. *Id*.; *cf. Brodheim v. Cry*, 584 F.3d 1262, 1266 (9th Cir. 2009) (noting that prisoner had properly exhausted administrative remedies where he had filed a new grievance regarding the appeals coordinator's actions on review). Similarly, in *McCurdy v. Rivero*, the court held that the plaintiff had failed to exhaust a claim for improper screening where the plaintiff's original grievance mentioned neither the improper screening nor the screener. *See* No. 17-01043 BLF, 2018 WL 4300521, at *3, 6-7 (N.D. Cal. Sept. 10, 2018).

Applying this law to the instant facts, the Court concludes plaintiff did not exhaust his claim against the Grievance Defendants. Plaintiff's original Grievance argued he did not violate a rule, and that his right to due process was violated in the disciplinary proceedings. *See* Grievance at 3, 5. Plaintiff named only the Disciplinary Defendants in the original Grievance. *See id*. The wrongs at issue in the original Grievance thus related exclusively to the underlined disciplinary proceedings.

1    Plaintiff later added allegations against the Grievance Defendants to his third level appeal.

2    *See* Grievance at 6. The expanded Grievance accused the Grievance Defendants of wronging

3    plaintiff during the <u>grievance</u> proceedings. *See id*. Specifically, plaintiff argued Appeals

4    Coordinator Bond and Chief Deputy Warden Ducart "failed to address or answer" plaintiff's

5    constitutional claims, failed to follow the appropriate "due-process interview process procedures,"

6    and "completely left out" a required mental health assessment. *Id*. at 6 (citing Cal. Code Regs. tit.

7    15, § 3317(a), (b) (together, stating inmates that participate in the Mental Health Delivery System

8    "shall receive" a mental health assessment, which "shall be considered" during disciplinary

9    proceedings)).

10    None of these alleged wrongs occurred during the disciplinary proceedings; they arose

11    from a distinct set of events and were perpetrated by a distinct set of wrongdoers. Plaintiff did not

12    identify these issues in his original Grievance, as required, *see* Cal. Code Regs. tit. 15, § §

13    3084.1(b), nor did the original Grievance identify Appeals Coordinator Bond or Chief Deputy

14    Warden Ducart as wrongdoers, as required, *see id*. at § 3084.2(a)(3). Because plaintiff did not add

15    these issues until his appeal to the third level of review, plaintiff did not comply with California's

16    requirements to identify all wrongdoers and issues in the original Grievance. *See* Cal. Code Regs.

17    tit. 15, §§ 3084.1, 3084.2(a)(3). Because plaintiff did not comply with California's requirements,

18    his claim is not exhausted as to the Grievance Defendants.

19    Moreover, plaintiff's failure to exhaust was not cured. The Ninth Circuit has held a

20    procedurally defective grievance may be exhausted if prison officials decide the grievance on the

21    merits. *See Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (describing how officials'

22    actions may cure an exhaustion problem). There, a California inmate whose grievance failed to

23    name all staff members involved nevertheless exhausted his claim because that claim was decided

24    on its merits at all levels of review. *See id*. at 656-57. Here, by contrast, officials did not ignore

25    the procedural defects. When plaintiff added new issues (regarding grievance proceedings) and

26

27                                                                19

28    Case No. 17-CV-07229-LHK (PR)
      ORDER GRANTING DEFS.' MOTS. FOR SUMM. JUDGMENT ON DUE PROCESS CLAIM; GRANTING IN
      PART AND DENYING IN PART DEFS.' MOTS. TO STRIKE

wrongdoers (the Grievance Defendants) in his appeal to the third level, Appeals Examiner Davis refused to address the new issues:

> The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action.

Grievance 3d Level Decision at 2. Because Appeals Examiner Davis did not decide plaintiff's new issues on the merits, the procedural defects were not cured.

Plaintiff could have filed a new grievance against Appeals Coordinator Bond and Chief Deputy Warden Ducart for any wrongdoing that occurred during their review of plaintiff's Grievance. Because plaintiff did not do so, *see* Hallock Opposition at 11 (arguing plaintiff should not have to file a new grievance), his due process claim against the Grievance Defendants is not exhausted and defendants are entitled to summary judgment. Even if plaintiff's claim against the Grievance Defendants were properly before the Court, that claim would likely fail: failure to properly process or investigate a grievance generally does not constitute a violation of a prisoner's constitutional rights. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("Ramirez's claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); *accord Young v. Voong*, 738 F. App'x 509, 510 (9th Cir. 2018) ("Young 'lack[s] a separate constitutional entitlement to a specific prison grievance procedure.'") (citation omitted).

Because plaintiff did not exhaust his due process claim against Appeals Coordinator Bond and Chief Deputy Warden Ducart, the court **GRANTS** summary judgment on plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment against them.

### C. Merits of the Due Process Claim as to the Disciplinary Defendants

The Complaint alleged that Sergeant Hallock, Lieutenant Hunt, Captain Wood, Appeals Coordinator Bond, Counselor Melton, Associate Warden Barneburg, Chief Deputy Warden Ducart, and CDO Bradbury violated plaintiff's rights under the Due Process Clause of the

20

Fourteenth Amendment.  As found, *supra* III.B, plaintiff failed to exhaust his claim as to Appeals Coordinator Bond and Chief Deputy Warden Ducart.  Accordingly, the Court will analyze the merits of plaintiff's claim as to Sergeant Hallock, Lieutenant Hunt, Captain Wood, Appeals Coordinator Bond, Counselor Melton, Associate Warden Barneburg, and CDO Bradbury (together, the "Disciplinary Defendants").  For the reasons below, the Court concludes that plaintiff has failed to show that the Disciplinary Defendants violated plaintiff's right to due process because plaintiff did not identify a liberty or a property interest sufficient to trigger the Due Process Clause.

Plaintiff alleged he participated in a hunger strike and was issued an RVR for delaying or obstructing peace officers and medical personal from completing normal duties.  *See* Compl. at 3, *see also* RVR.  The RVR was referred to Counselor Melton, who classified it as "serious" and referred it to Lieutenant Hunt.  *See* Melton Decl. ¶ 7.  Lieutenant Hunt conducted a disciplinary proceeding.  *See* Hunt Decl. ¶¶ 1-2, 5-7.  He did not permit plaintiff to call plaintiff's desired witnesses, Sergeant Hallock and Associate Warden Barneburg.  *See* Hunt Opp. at 2, 4-5, 8, 14.  In the Hunt Opposition, plaintiff also contended Lieutenant Hunt denied plaintiff an unbiased hearing, the chance to present evidence, and to be heard.  *See id*. at 4.

Lieutenant Hunt found plaintiff guilty of "willfully delaying a peace officer," and as punishment assessed plaintiff a forfeiture of 90 days' good-time credit and placed plaintiff into a restricted-privileges group for a total of 30 days.  Hunt Decl. ¶ 7; *see also* Disciplinary Decision.  As part of the restrictive-privileges group, plaintiff was allowed "no family visits, no telephone calls, limited (concrete) yard access, no access to any other recreational or entertainment activities, no accrual of excused time off, no special packages, no special canteen purchases and one-fourth the maximum monthly canteen draw."  *Id*.  In the Hallock Opposition, plaintiff stated that in addition to these restrictions, his personal appliances were confiscated as part of his punishment.  Hallock Opp. at 3.  Because this confiscation was part of plaintiff's punishment, it appears to also have lasted for a total of 30 days.

United States District Court
Northern District of California

1    Plaintiff sought review of Lieutenant Hunt's decision from Captain Wood.  *See* Compl. at

2    3; *see also* Hallock Opp., Ex. C (requesting review by Captain Wood).  Captain Wood reviewed

3    and approved Lieutenant Hunt's decision and referred the matter to the chief disciplinary officer.

4    *See* Wood Decl.  Plaintiff alleges CDO Bradbury "signed off" on the findings, although CDO

5    Bradbury says that someone else signed off.  *Id.*; *see also* Bradbury Decl. ¶¶ 1-2, 6.

6    Once disciplinary proceedings concluded, plaintiff pursued the grievance proceedings

7    discussed *supra* III.B.  Following the completion of grievance proceedings, plaintiff petitioned for

8    habeas relief from the California state courts.  *See* Compl. at 4.  While plaintiff's habeas

9    proceedings were still pending, Associate Warden Barneburg modified and dismissed the

10   Disciplinary Decision.  *Id.*; *see also* Barneburg Decl. ¶ 1, 3.  As a reason for the modification,

11   Associate Warden Barneburg checked a box stating the Disciplinary Decision's "finding is not

12   supported by the evidence and it is not reasonable to believe that a new hearing would discover

13   new evidence supporting the finding."  Modification Order at 1.  The Modification Order went on

14   to state that the "Chief Disciplinary Officer [had] recently reviewed" plaintiff's Disciplinary

15   Decision, and that "[b]ased on that review" the Disciplinary Decision was "modif[ied], reverse[d],

16   and dismiss[ed]" and plaintiff's good-time credits were restored.  *Id.*

17   The Complaint contended that, through the above actions, the Disciplinary Defendants

18   violated plaintiff's right to due process.  Compl. at 3.  Analysis of a due process claim "proceeds

19   in two steps: We first ask whether there exists a liberty or property interest of which a person has

20   been deprived, and if so we ask whether the procedures followed by the State were constitutionally

21   sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219–20 (2011).  Here, defendants argued that

22   plaintiff's claim fails at the first step because the Due Process Clause was not "triggered" because

23   plaintiff was not deprived of a constitutionally protected liberty interest.  Hallock MSJ at 11.

24   Defendants argued that plaintiff's liberty interest was not implicated by the temporary loss of his

25   good-time credits because those credits were later returned, and that plaintiff's temporary loss of

26   privileges does not constitute a liberty interest.  *Id.* at 12.  Defendants argued that, even if the Due

27
28   Case No. 17-CV-07229-LHK  (PR)
     ORDER GRANTING DEFS.' MOTS. FOR SUMM. JUDGMENT ON DUE PROCESS CLAIM; GRANTING IN
     PART AND DENYING IN PART DEFS.' MOTS. TO STRIKE

United States District Court
Northern District of California

Process Clause was triggered, plaintiff received due process, and defendants are entitled to qualified immunity. *Id*. at 13-14.

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property." *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995) ("The more familiar office of the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state."). In the prison context, the interests protected by the Due Process Clause are generally ones pertaining to liberty. However, in certain circumstances the loss of an inmate's property may also trigger the Due Process Clause. *See, e.g., Shinault v. Hawks*, 782 F.3d 1053 (9th Cir. 2015) (concluding the Due Process Clause was implicated where prison officials froze an inmate's trust account).

Interests that are protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976) (explaining the Due Process Clause extends to state-created liberty interests).

Defendants argued that plaintiff did not identify a constitutionally protected liberty interest but did not address whether plaintiff identified a property interest. In the Hallock Opposition, plaintiff stated that his "personal appliances" had been confiscated as part of plaintiff's 30-day punishment. Hallock Opp. at 3. The Court notes the Complaint did not state that plaintiff was deprived of any property, and instead listed only that he was punished with "no telephone calls, no accrual of good time off, no access to any recreational or entertainment activities, no special packages, no special canteen purchases, etc., etc., other penalties." Compl. at 3. The Complaint also referred to the Disciplinary Decision in which "Hunt . . . found plaintiff guilty of . . . 'willfully delaying a peace officer'" and "assessed penalties." *Id*. In the Disciplinary Decision, Lieutenant Hunt said "[t]he privileges that may be restricted" as punishment "*include* [] no family visits, no telephone calls, limited (concrete) yard access, no access to any other recreational or entertainment activities, no accrual of excused time off, no special packages, no special canteen

purchases and one-fourth the maximum monthly canteen draw." *See* Disciplinary Decision at 2 (emphasis added).

The Court is required, "where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (citations omitted). Because the word "include" in the Disciplinary Decision implies that defendants may have punished plaintiff in other, unenumerated ways, and because plaintiff stated he suffered "other penalties" in his Complaint, it is plausible that the Disciplinary Decision envisioned the confiscation of plaintiff's personal appliances. The Court will therefore analyze whether the confiscation of plaintiff's personal appliances triggered the Due Process Clause.

Here, defendants have shown that plaintiff was not deprived of a protected liberty interest. In addition, the Court concludes plaintiff was not deprived of a protected property interest.

### 1. Liberty Interest

As punishment for his rules violation, plaintiff was assessed a forfeiture of 90-days' good-time credit and his privileges were restricted for a total of 30 days. *See* Disciplinary Decision. In the Summary Judgment Motions, defendants argued that plaintiff cannot predicate a claim on good-time credits that were later restored, and that the privileges restriction was insufficient to trigger a liberty interest. The Court agrees.

As to the good-time credits, defendants conceded the Due Process Clause initially may have been triggered by the forfeiture of plaintiff's good-time credits. *See* Hallock MSJ at 10-11 (stating California has created a protected liberty interest in good-time credits). However, they argued plaintiff cannot predicate a claim for violation of the Due Process Clause of the Fourteenth Amendment on the loss of good-time credits because those credits were later restored. *Id*. at 12. The Court's review of precedent reveals defendants are correct. The Ninth Circuit has repeatedly held a plaintiff cannot predicate a due process claim on the loss of good-time credits if those credits were later restored. *See Womack v. Grannis*, 453 F. App'x 713 (9th Cir. 2011) ("The

Case No. 17-CV-07229-LHK  (PR)
ORDER GRANTING DEFS.' MOTS. FOR SUMM. JUDGMENT ON DUE PROCESS CLAIM; GRANTING IN PART AND DENYING IN PART DEFS.' MOTS. TO STRIKE

district court properly dismissed Womack's due process claim because his good time credits had been restored . . . ."); *Gonzalez v. Prunty*, 133 F.3d 927 (9th Cir. 1998) ("Gonzalez's . . . good-time credits were restored . . . the district court did not err by dismissing Gonzalez's due process claim.") (unpublished). Accordingly, to the extent plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment is based on the loss of good-time credits, the claim fails.

As to the restriction on plaintiff's privileges, defendants argued the privileges restriction does not implicate a liberty interest sufficient to trigger the Due Process Clause. *See* Hallock MSJ at 12. Again, a review of precedent reveals defendants are correct. Plaintiff temporarily lost access to family visits, telephone calls, unlimited yard access, recreational and entertainment activities, special packages, and canteen purchases. *See* Disciplinary Decision. The Ninth Circuit has considered restrictions on each of the privileges at issue here and held their restriction does not implicate a liberty interest. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding there is no constitutional right to canteen items), *opinion amended on denial of reh'g,* 135 F.3d 1318 (9th Cir. 1998); *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.) (finding "there is no liberty interest in" the loss of recreational programs), *opinion amended on denial of reh'g,* 75 F.3d 448 (9th Cir. 1995); *Mahon v. Prunty*, 87 F.3d 1320 (9th Cir. 1996) (finding no liberty interest in family visits, telephone calls, or yard access) (unpublished); *Davis v. Small*, 595 F. App'x 689, 691 (9th Cir. 2014) (finding no liberty interest in telephone or yard privileges); *see also Sandin v. Conner*, 515 U.S. 472, 500 (1995) (Breyer, J., dissenting) (describing the "'[l]oss of privileges' such as "community recreation; commissary; . . . personal visits . . . ; personal phone calls . . ." as "less significant" and "comparatively unimportant prisoner 'deprivations'").

Because plaintiff's good-time credits were restored to him, and the Ninth Circuit has held that the privileges at issue here do not give rise to a liberty interest, plaintiff cannot predicate a due process claim on the loss of a liberty interest.

## 2.      Property Interest

In the Hallock Opposition, plaintiff represented that, in addition to the privileges restriction, the rules violation was punished by confiscation of his personal appliances.  Hallock Opp. at 3.  The confiscation appears to have lasted for a total of 30 days.  *See* Disciplinary Decision at 5 ("[T]hese restrictions will remain in place for FROST for a total of 30 days.").  Although defendants argued extensively that plaintiff had not shown he was deprived of a liberty interest, defendants did not analyze whether this confiscation deprived plaintiff of a property interest.  *See generally*, Summ. J. Mots.  The Court analyzes this issue *sua sponte* and concludes the confiscation of plaintiff's appliances did not implicate a property interest sufficient to trigger the Due Process Clause.

While the Constitution does not confer specific property interests, the Due Process Clause may protect property interests recognized and protected under the relevant state's laws:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Paul v. Davis*, 424 U.S. 693, 710–11 (1976); *see also Roth,* 408 U.S. at 577 (protected property interests "stem from an independent source, such as state law—rules or understandings that secure certain benefits and support claims of entitlement to those benefits.").

The United States Supreme Court has held that a state law creates a protected property interest only if officials' discretion with respect to the property is restricted by mandatory language in the law.  *See Hewitt v. Helms,* 459 U.S. 460, 472 (1983) ("*Hewitt* test") (concluding that the state's use of "explicitly mandatory language" showed the state had created a protected interest); *see, e.g., Castle Rock v. Gonzales,* 545 U.S. 748, 755–66 (2005) (finding no protected

Case No. 17-CV-07229-LHK  (PR)
ORDER GRANTING DEFS.' MOTS. FOR SUMM. JUDGMENT ON DUE PROCESS CLAIM; GRANTING IN PART AND DENYING IN PART DEFS.' MOTS. TO STRIKE

property interest in enforcement of restraining orders in part because relevant provisions of state law did not truly make enforcement of restraining orders mandatory).

Under the *Hewitt* test, plaintiff's property-based due process claim fails because there is no state-created property interest in prisoners' personal appliances. Inmates in California prisons do not have a general right to possess personal property while incarcerated. 15 *See* Cal. Code Regs. § 3192 ("An inmate's right to inherit, own, sell or convey real or personal property does not include the right to possess such property within the institutions/facilities of the department."). Because California does not entitle plaintiff to have personal property in prison, a due process claim based on confiscation of plaintiff's personal appliances fails as a matter of law. *See Gray v. Celaya*, No. 17-CV-02395-WHO (PR), 2018 WL 2971117, at *3 (N.D. Cal. June 13, 2018) ("Because Gray has no entitlement to have property in prison, his due process property claim fails as a matter of law."); *accord Schrubb v. Tilton*, No. C-08-2986 TEH (PR), 2014 WL 4129577, at *5 (N.D. Cal. Aug. 21, 2014) ("Plaintiff does not cite any state law or prison regulation that authorizes or entitles him to possess personal property in prison. Therefore, Plaintiff does not have a legitimate claim of entitlement to possess personal property in prison. Without such a property interest, Plaintiff's due process claim based on a property interest fails as a matter of law."), *aff'd*, 633 F. App'x 380 (9th Cir. 2016); *cf. Birks v. Galaza*, 139 F. App'x 820, 821 (9th Cir. 2005) (concluding the plaintiff "did not, and could not, raise a genuine issue of material fact with respect to whether he had a property interest in confiscated contraband") (citing § 3192).

Following *Hewitt*, the United States Supreme Court announced a more stringent test that applies at least to liberty interests. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) ("*Sandin* test") (requiring a prisoner to show that a restriction "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" to trigger the Due Process Clause). However, *Sandin* did not apply this test to a property interest. *See id.* Appellate courts have split on the question of whether the *Sandin* test applies to property interests. *Compare Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir.1999) (applying the *Sandin* test to prisoner property

27

claims), and *Abdul–Wadood v. Nathan,* 91 F.3d 1023, 1025 (7th Cir.1996) (suggesting *Sandin* applies to prisoners' property claims), *with Bugler v. U.S. Bureau of Prisons,* 65 F.3d 48, 50 (5th Cir.1995) (declining to extend *Sandin* to prisoner property claims), and *Woodard v. Ohio Adult Parole Auth.,* 107 F.3d 1178, 1182–83 (6th Cir.1997) (noting that the prevailing doctrine instructs that "state law controls as to the existence of a property interest"). The Ninth Circuit has not yet stated whether *Sandin* also applies to property interests. *See Schrubb*, 2014 WL 4129577, at *5 ("it is not clear from existing case law whether the rationale of *Hewitt* or *Sandin* should be applied to property interest claims arising from prison conditions"); *Owens v. Ayers*, No. C 01-3720 SI (PR), 2002 WL 73226, at *2 (N.D. Cal. Jan. 15, 2002) ("The Ninth Circuit has not yet determined whether *Sandin* applies to a prisoner's property claim."). Because it is not clear whether *Sandin* applies to plaintiff's property claim, the Court will apply this test in an abundance of caution.

Under the *Sandin* test, plaintiff's claim still fails because the loss of the property at issue here is not a significant deprivation, and because the property was confiscated for only a short period of time. First, courts have considered the confiscation of appliances, and concluded their loss is not a significant deprivation when compared to the ordinary incidents of a prisoner's life. *See, e.g., Chhoun v. Woodford*, No. C 03-3219 SI, 2005 WL 1910930, at *10 (N.D. Cal. Aug.10, 2005) (plaintiff failed to state a due process claim where he was deprived of books, magazines, and a television for 90 days); *Gray*, 2018 WL 2971117 at *1 (plaintiff failed to state a due process claim where the confiscated property consisted of a television, radio, CD player, and AC adaptor).

Second, plaintiff appears to have been deprived of his property for a total of 30 days. In the Disciplinary Decision, Lieutenant Hunt specified that plaintiff's punishment was to last a total of 30 days. *See* Disciplinary Decision ("[T]hese restrictions will remain in place for FROST for a total of 30 days."). Where property is confiscated for such a short time, courts hold the loss does not trigger the Due Process Clause. *See, e.g., Owens,* 2002 WL 13226, at *5 ("Under *Sandin,* separating an inmate from his property for a mere three months would not amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.");

United States District Court
Northern District of California

*Chhoun*, 2005 WL 1910930 at *6-9 (concluding a 90-day loss of personal property did not violate due process); *Gray*, 2018 WL 2971117 at *1, 3 (N.D. Cal. June 13, 2018) (rights not violated where appliances taken away for 30 days).

Because plaintiff's property deprivation was neither significant nor lengthy, plaintiff has not identified a property interest sufficient to trigger the Due Process Clause.

Because plaintiff has not identified a liberty interest or property interest sufficient to trigger the Due Process Clause, he has failed to state a claim for deprivation of due process. Accordingly, the Court **GRANTS** defendants' motions for summary judgment as to plaintiff's claim for violation of the Due Process Clause of the Fourteenth Amendment against the Disciplinary Defendants.

## CONCLUSION

Defendants' Summary Judgment Motions are **GRANTED** as to the claim for violation of the Due Process Clause of the Fourteenth Amendment. Defendants' Motion to Strike four paragraphs of plaintiff's Declaration is **GRANTED**, and defendants' Motion to Strike plaintiff's sur-reply is **DENIED**.

The Court will address plaintiff's claim for violations of the First, Fifth, and Eighth Amendments in a separate order.

**IT IS SO ORDERED.**

Dated:

_____
LUCY H. KOH
United States District Judge

Case No. 17-CV-07229-LHK  (PR)
ORDER GRANTING DEFS.' MOTS. FOR SUMM. JUDGMENT ON DUE PROCESS CLAIM; GRANTING IN PART AND DENYING IN PART DEFS.' MOTS. TO STRIKE

United States District Court
Northern District of California